## Noel v. Jones, et al.

(Decided November 25, 1919.)

### Appeal from Franklin Circuit Court.

1. Wills—Identification of Real Property—Intention of Testator.— For the purpose of identifying real property, which is defectively described in a will, and for the purpose of ascertaining the intentions of the testator, when he made use of the terms of description, evidence may be considered, as to the lands owned by the testator, the character of the lands and their condition, and how he used and designated them.

2. Wills—Devise of "Home Farm"—What Included.—The devise of the testator's "home farm," or "home place" generally carries with it, all the lands actually used by, and in the possession of the testator, at the place where he lives, and may include several parcels of land, not immediately adjacent, if the testator used them altogether as one tract.

3. Wills—Construction—Intention of Testator.—Under the rule prescribed by section 4839 Kentucky Statutes, that a will shall be construed with reference to the real and personal property comprised in it, to speak and have effect, as if it had been executed immediately preceding the death of the testator, unless a contrary intention appears from the will, has no effect upon the property not comprised in the will.

4. Wills—Construction—Rule as to Time Effective.—If the terms of a will are not general and broad enough to comprise certain real property, if the testator had owned it, at the date of his will, it will not pass under the will, under the rule, that the will shall be considered to speak, as if made immediately preceding the testator's death.

LESLIE W. MORRIS and HAZELRIGG & HAZELRIGG for appellant.

B. G. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The grandfather of appellant, Silas H. Noel, who bore the same name, died, in the year, 1895. Previous to his death, on the 8th day of January, 1894, he executed his last will and testament, which was duly probated after his death. At the date of the execution of his will, he was the owner of a farm, which consisted of about four hundred and one acres, and which he had acquired title to, from one Proctor, and upon which he resided. Adjoining this tract of land, and between it and the Lees-

town turnpike, there were four small tracts of land, of which he was the owner. One of these small tracts contained about twelve acres, and the other three containd less than one acre each. These tracts were situated on the western side of the Proctor tract. He was, at that time, also, the owner of three tracts of land, which, together, contained one hundred and thirteen acres, and which were situated upon the north side of the Proctor tract, and adjoined each other, but only one of these tracts adjoined the Proctor tract, for a distance of about thirty feet, and was separated, from it, by a fence. He also, owned two houses and lots upon Ann street, in Frankfort, Kentucky, one upon Wilkinson street, and another upon Clinton street, in the same city, and a vacant lot, in Thorn Hill, nearby. His wife was then living, and, also two daughters, who were married, and whose names were Maggie Jones and Clara Noel, respectively.

By the first, second, third, fourth and fifth clauses of his will, he disposed of his entire personal estate. The sixth clause of his will, and the construction of which is in controversy, here, is as follows: "Sixth: I give and bequeath to my wife and Maggie Jones, my daughter, the home place, known as the Proctor farm, containing about 425 acres and the remainder of the land and the house and lot on Wilkinson street, in Frankfort, Ky., and the house and lot on Clinton street, in Frankfort, Ky., and the lot at what is known as Thorn Hill, near Frankfort, Ky., to be held and used by them jointly until the death of my wife; and at the death of my wife, Maggie Jones is to have the home place containing about 425 acres, during her life, and at her death said place is to be divided as follows: One-half of said farm to her oldest child, Silas Noel Jones, and the remainder to be divided equally amongst all her children, including said Silas Noel Jones, and in the case of the death of any of her children during infancy, the others are to inherit his or her portion, and at the death of my wife, I give and bequeath the remainder of my land, outside of the home farm, and the two houses and lots and the lot above mentioned, to my daughter, Clara Noel, during her life, and at her death to go to her son, Silas M. Noel.

"I, also give and bequeath to my daughter, Clara Noel, wife of John C. Noel, my two houses and lots on Ann

street, between Main and Market streets, in Frankfort, Ky., during her life, and at her death, to go to her son, Silas M. Noel.''

After the execution of the will, the testator became the owner of a house upon Washington street, in Frankfort, and another lot in Thorn Hill.

This action was instituted, among other things, for a construction of the will, and thereby, to have it determined, as to what property passed to each of the devisees under the will, as well as the rights of the devisees therein, respectively. The widow of the testator, having died, the trial court adjudged, that the will devised to Maggie Jones the Proctor farm, or ''home place,'' consisting of the original Proctor farm, and the small tracts of land owned by testator, which adjoin it on the west side, and bind upon the Leestown turnpike road, during her natural life, with remainder to her children. These small tracts contain 12.984 acrs, .508 of an acre, .095 of an acre and about one-half of an acre, respectively. It was, also, decided, that the will devised to Clara Noel, with remainder to her son, Silas M. Noel, the appellant, the house and lot on Wilkinson street, in Frankfort, the house and lot on Clinton street, and the lot in Thorn Hill, which testator owned, at the time of the execution of the will, but, that the house and lot on Washington street, and the lot in Thorn Hill, which were acquired by testator after the making of his will, did not pass to any of the devisees under the will, but, that testator died intestate as to those pieces of property and they passed to his heirs, in accordance with the laws of descent, and distribution, and from this judgment, the appeal, herein, was taken.

As to the two houses and lots upon Ann street, in Frankfort, it is conceded, that these were devised, by the will, to Clara Noel for life, with remainder to her son, the appellant, and were not in controversy, in this action. It is contended by appellant, that the court erred in adjudging:

(1) That the four small tracts of land, adjoining the original Proctor farm upon the west, and abutting upon the Leestown turnpike road, were a part of the Proctor farm, or ''home place'' of the testator, and were a part of the devise to Maggie Jones, for life, with remainder

to her children, upon the death of her mother, the testator's widow.

(2)    That the house upon Washington street and the lot in Thorn Hill, acquired by testator, after the execution of the will, were undevised, and did not pass to Clara Noel, for life, with remainder to appellant, under the will.

These contentions will be considered in their order:

(a).  The soundness or unsoundness of the first contention, because of which a reversal is sought, turns upon a determination of what the testator meant and intended, when he said in the will, that "Maggie Jones is to have the home place, containing about 425 acres," or rather what he intended that the "home place containing about 425 acres" should include.  It is not overlooked, that in the second line of the sixth clause, when making the joint devise to Maggie Jones and his wife, the testator described the "home place," as being "known as the Proctor farm," and if there was nothing further, to shed light upon the testator's meaning, it would seem, that he used the term, "home place" as meaning the Proctor tract proper, but, it will be observed, that he describes the joint devise to his wife and Maggie Jones, as the "home place," known as the Proctor farm containing about 425 acres," and when he came to devise the same property to Maggie Jones, to take effect, in possession, after the death of his wife, he described it as the "home place containing about 425 acres."  The Proctor farm, proper, contained only a fraction of an acre in excess of 400 acres, and since the testator owned and resided upon it for twenty or twenty-five years previous to the execution of his will, and made the purchase of it separately from his other lands, it must be assumed, that he was acquainted with the fact, that it only contained 400 acres, instead of about 425 acres.  For the purpose of identifying real property, which is defectively described in a will, evidence may be considered, as to the lands owned by the testator, the character of the lands and their condition, and how he used and designated them, and for the purpose of ascertaining the intentions of the testator, when he made use of the terms of description, although such evidence can not be invoked for the purpose of creating a devise, which the will does not

make, nor to contradict the will. P'Simer v. Steele, etc., 32 K. L. R. 647. The devise of a "home place" or "home farm" is equivalent to the terms, the land or farm upon which "I now live," or "now occupied by me," and the latter terms will carry all the lands, actually used by, and, in the possession of the testator, at that place where he lives or occupies, and may include several parcels, not immediately adjacent, if they were all used together and constituted one tract, and a general word concerning a piece of real estate will include all lands used with it. Gentry v. Gentry, 25 K. L. R. 1433, Kelsay v. Long, 7 K. L. R. 823; 40 Cyc. 1532. The intention of the testator, which, in all cases, must govern the construction of his will, is the intention, he had at the time and while making his will. Maupin v. Goodloe, 6 T. B. M. 399; Reuling v. Reuling, 137 Ky. 640. To ascertain the testator's intention, at that time, the language of the will must be construed in the light of the circumstances, existing and surrounding him, when he executed the will. McClelland's Extrx. v. McClelland, etc., 132 Ky. 284; Reuling v. Reuling, *supra*. As heretofore stated, the evidence shows, that, at the time of the execution of the will, the testator owned the Proctor farm, proper, the four small tracts adjoining it upon the west, and bordering on the Leestown pike, and containing, together, thirteen or fourteen acres, 113 acres of land to the north of the Proctor farm, and the lots in Frankfort and Thorn Hill, which were specifically mentioned. All the farm lands, owned by him, were comprised by the Proctor farm, and the tracts adjacent to it, and all of which he appeared to use as his "home place," although, when referring specifically to one of the adjacent tracts, he designated it by the name of the person from whom he acquired it, or some name descriptive of its use or condition. Hence, the devise of the "home place" would seem to carry with it all the lands he owned, at that place, including the Proctor farm, and the adjacent lands used with it as one tract, if the other terms of the will did not disclose clearly a contrary intention.

When he devised the "home place containing about 425 acres," it is clear, that he intended to include more land in it, than the Proctor farm, proper, which had only 400 acres, and it is equally clear, that he did not intend to include all of his lands adjacent to the Proctor

farm, for if he had, he knew, that he was devising, to her, about 527 acres, instead of 425 acres, and in the joint devise to his wife and Maggie Jones after mentioning the "home place, known as the Proctor farm containing about 425 acres," he, specifically, devises, to them, for the life of his wife, "the remainder of the lands" and after the death of his wife, he devises to Maggie Jones and her children, the "home place," and, to Clara Noel and her son, "the remainder of the land, outside of the home farm." The small tracts of land on the west side of the Proctor farm, proper, and bordering on the Leestown pike, and all of which, except one, containing only .095 of an acre, lie directly between the pike and the Proctor farm, and fill the intervening space, and had been used by the testator, as a part of his home place for a number of years, before the making of the will. The fencing, which had formerly separated them from the Proctor farm, had been removed by the testator, many years before, when he incorporated them into the farm upon which he resided, and in the lists, made by him of his property for taxation, they, and the Proctor farm were listed and treated by the testator as being one tract of land. The Proctor farm, contained nearly forty times as much land, as all the four small tracts on the western side of it together, and it is not strange, that, when the testator incorporated them into it, he should designate the entire boundary, as the "Proctor farm," although it should not be overlooked, that, in the devise to Maggie Jones and her children, the property devised, is described as the "home place," and not as the Proctor farm. In making the lists of his property for taxation, for two or more years previous to the execution of the will, the testator listed the 113 acres, which lie to the northward of the Proctor farm, as a separate tract from the lands, embraced in the "home place," and these lands adjoin the Proctor farm for the space of only about thirty feet. He evidently treated them as a separate tract of land from his home place. Hence, we conclude, that the testator intended, that the "home place containing about 425 acres," which he devised to Maggie Jones and her children, should consist of the Proctor farm and the four small tracts of land on its western margin, and that the 113 acres, to the northward of the Proctor farm, should pass under the

designation of "remainder of my lands" to Clara Noel, and her son.

(b) The disposition of the house and lot upon Washington street, and the lot in Thorn Hill, both of which were acquired by the testator, after the execution of the will, depends upon the determination as to the soundness of the second of appellant's contentions. It is contended, that the words, "and at the death of my wife, I give and bequeath the remainder of my land, outside of the home farm . . . to my daughter, Clara Noel, etc.," in the concluding portion of the sixth clause, devised to her for life, with remainder to her son, the lots, which testator acquired after the execution of the will. This contention could have no support, except upon the theory, that, under the rule prescribed by section 4839, Ky. Stats., it does not appear, from the will, that the testator did not intend, that all real property, which he might acquire and own at his death, other than the "home farm," should pass under the devise of "the remainder of my lands outside of the home farm," to Clara Noel and her son. It will be remembered, that, under the rule of the common law, a will spoke and had effect as to real property comprised in it, as of the date of its execution, and that such property acquired by the testator after the execution of his will, did not pass under it. This rule was changed by the statute, which is now section 4839, Ky. Stats., which provides, that "a will shall be construed with reference to the real and personal estate comprised in it, to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." Giving to this statute all the effect, which it was intended to have, it is clear, that it does not affect any real estate, except such as is comprised in the will, and, after acquired real estate, does not pass under it, unless there is some clause, in it, broad enough to comprise or embrace the after acquired property, and when read in connection with the other parts of the will, and in the light of the circumstances surrounding the testator, it does not appear, from the will, that the testator's intention was, that the after acquired property should not pass under it. It can not be disputed, that general words, in a will, descriptive of property, and where the will purports to pass all real property of a testator, or

all such property, not specifically excepted, will operate to pass real property, subsequently acquired, unless it shall appear, from the will, that the testator had a contrary intention, Pepper v. Pepper, 115 Ky. 520, but, if there is no clause in the will, which is general and broad enough to have comprised the after acquired real property, if the testator had owned it, at the date of the execution of the will, it could not be said, that at the date of his death, or, just preceding it, the testator intended, that it should be embraced by and pass under the will, but, a contrary intention would appear from the will. In the instant case, the testator, in his will, does not make any reference to after acquired property, nor is there any general term made use of, descriptive of the property, which the will purports to effect, when read in the light of the context, which is general and broad enough to include the lots acquired after the will was made, nor to have embraced them, if the testator had owned them, at the date of his will. True, houses and lots, in cities and towns, are lands and the will devised to Clara Noel, for life, with remainder to her son, "the remainder of my lands, outside of the home farm," but, the testator, throughout his will, makes a clear distinction between lands for agricultural purposes, and lands, which consist of houses and lots, in cities and towns. Each of the houses and lots treated of in his will, he specifically mentions, by its location, and disposes of it specifically, under the designation of a house and lot, or lot on a certain street, or in a certain place, and the term, "lands," he applies to the lands suitable for, or used for purposes of farming—such lands as of which the "home farm" consisted. Hence, when the term "remainder of my lands, outside of the home farm," were used, the testator was, evidently, referring to the 113 acres of farming lands, which he then owned, "outside of the home farm," and which were situated to the northward of the home farm, although under the rules, above stated, if, after the execution of the will, the testator had acquired lands of the same class, as the 113 acres, they would have passed under the will, as the term, "remainder of my lands, outside of the home farm." would have been general enough to have embraced them. As a residuary clause, the language, "remainder of my lands, outside of the home farm," would

have the effect to pass all property of a similar kind, but, its operation would be confined to that description of property of which the residue consisted, which was lands, suitable for, or used for farming purposes. Hence, it appears, from the will, that the testator did not intend to include houses and lots, in-towns, in the residue of his "lands outside of the home farm," nor any real property, except of a character similar to the "home farm," or farming lands. This conclusion is reached without overlooking the rule, that a residuary clause should be construed liberally, so as to prevent any intestacy if possible, without doing violence to the testator's intention, nor the presumption in aid of such construction, to the effect, that a testator always intends to dispose of all of his property by his will, but it appears, from the will, that the testator had no intention, that the house and lot on Washington street and the lot in Thorn Hill, acquired after the will was made, should pass under it, and as a result, he died intestate, as to them.

The judgment is therefore affirmed.