[Civ. No. 9805. First Appellate District, Division Two.—May 15, 1935.]

In the Matter of the Estate of EMILIE A. HELM, Deceased. OSCAR C. HELM, Appellant, v. CHARLES HELM, Respondent.

Marshall Rutherford and George D. Collins, Jr., for Appellant.

Nathan Harry Miller for Respondent.

SPENCE, J.—This is an appeal from the judgment of the probate court wherein said court adjudged all of the property in question to be the community property of the decedent, Emilie A. Helm, and her husband, Charles Helm, the respondent herein, and further adjudged that said respondent was entitled thereto as the survivor of the marital community.

Decedent executed her last will and testament on September 13, 1923. In said instrument respondent Charles Helm, her husband, and appellant Oscar C. Helm, her son, were named as executors. Decedent first declared in said will that all of the property described therein was her separate property and that "None of the property which I describe hereafter represents any community interest therein with my said husband." Decedent thereupon specifically described in her will all of the property in controversy acquired prior to the execution of said will. Then after making certain bequests and devises to the respondent husband, a clause provided that in the event her husband established a "community interest in and to any of my property as designated herein", the provisions for bequests and devises to her said husband should be void. Then followed a provision in favor of appellant as follows: "I give, bequeath and devise all the rest, residue and remainder of my *said* property to my ·son Oscar C. Helm." (Italics ours.)

After the death of decedent in 1931, respondent and appellant jointly applied for letters testamentary which letters were granted. The controversy regarding the nature of the property then arose. Respondent filed an inventory wherein he returned all of the property as community property. Appellant also filed an inventory wherein he returned all of the property as the separate property of the decedent. Respondent later filed his first and final account and petition to declare the property to be the community property of decedent and respondent. Appellant filed his exceptions to said account and petition. Appellant also filed his own account and petition for distribution to which respondent filed his objections. Both of said accounts and petitions and all pleadings filed by the parties came on for hearing. Said accounts were settled and thereafter the court entered the judgment from which this appeal is taken. The court found and declared by said judgment that all of the property in controversy was community property and that upon the death of decedent in 1931, all of the community property acquired prior to July 16, 1923 (the effective date of the 1923 amendment to section 1401 of the Civil Code, now section 201 of the Probate Code) vested in and became the property of the respondent husband. It was further decreed that decedent died intestate as to her community interest in the property acquired subsequent to July 16, 1923, and that upon the death of decedent, title thereto vested in the respondent husband by reason of such intestacy.

We will state appellant's first contention in his own words as follows: "No jurisdiction to adjudicate in a probate proceeding an adverse claim of title to property the court adjudges is no part of the estate." We find no merit in this contention. The authorities sustaining the general rule that the probate court has no jurisdiction to try title where the property is claimed adversely by a stranger to the probate proceedings have no application. Here the husband was one of the executors and claimed the property in his individual capacity. The general rule and the exception are clearly pointed out in *Bauer* v. *Bauer*, 201 Cal. 267 [256 Pac. 820]. The court there said at page 271: "It has, however, been held that when title to property is claimed by a representative of an estate in his individual capacity the superior court, sitting in probate, is vested with the jurisdiction of determin-

ing the validity of such claim upon the settlement of the final accounts of such representative." (See, also, *Estate of Kelpsch*, 203 Cal. 613 [265 Pac. 214]; *Estate of Roach*, 208 Cal. 394 [281 Pac. 607]; *Estate of Fulton*, 188 Cal. 489 [205 Pac. 681]; *Estate of Vucinich*, 79 Cal. App. Dec. 434 [37 Pac. (2d) 175]; *Estate of Escolle*, 134 Cal. App. 473 [25 Pac. (2d) 860]; *Stevens* v. *Superior Court*, 155 Cal. 148 [99 Pac. 512]; *Estate of Bruck*, 140 Cal. App. 300 [35 Pac. (2d) 431].) Appellant apparently concedes that there is an exception to the general rule, but seems to take the position that the probate court is vested with jurisdiction only for the purpose of adjudging the representative's claim to be invalid and of charging him with the property in the accounting and is without jurisdiction to determine the claim in favor of the representative in his individual capacity. It is sufficient to state that appellant cites no authorities in support of his position and that the authorities above cited make no such distinction. ■ Under the heading, appellant also argues that as the adverse claim was adjudicated in favor of respondent, the probate court had no jurisdiction as "there can be no jurisdiction in probate if there is no property of the decedent". We are of the opinion that this argument is also untenable. The jurisdiction of the probate court is not dependent upon the ultimate determination of the existence of assets. The necessary jurisdictional showing is made at the time of the application for letters, and only a *prima facie* showing regarding assets need ordinarily be made. In 11A California Jurisprudence, page 112, it is said: "It has been doubted that the existence of assets is jurisdictional; at least the amount and value are not, and a fair probability of right which may or may not prove to be of value or validity seems to be enough." Here the property stood of record in the name of decedent. This fact alone made a *prima facie* showing of assets and showed at least a "fair probability of right". Upon this showing the probate court granted letters and it had jurisdiction to do so. As was said in *Estate of Daughaday*, 168 Cal. 63 [141 Pac. 929, 932], at the bottom of page 71: "So it may be said that the probate court will always grant such letters where administration is either necessary or advisable or desirable." We therefore conclude that the probate court had jurisdiction to issue letters and to proceed with the administration, and the mere fact that the adverse

claim was thereafter resolved in favor of said executor in his individual capacity did not serve to deprive the probate court of such jurisdiction.

Appellant further contends that "the property in dispute is separate property of decedent and not community property". We assume that appellant means to challenge the sufficiency of the evidence to support the findings to the contrary. A reading of the record, however, shows the existence of ample testimony for this purpose. We deem it unnecessary to set forth this evidence in detail, but it may be briefly summarized. Respondent and decedent were married in 1894 and moved to California shortly thereafter. At that time they were apparently without funds or property of their own, as they borrowed money and lost the same in a business venture. Commencing in 1899 and for many years thereafter respondent worked in a butcher shop where he received his wages and the meat for his household. The parties were apparently thrifty and as early as 1902 they started acquiring real estate and improving it. Respondent had a water tank on the property and derived an income of $35 per month for seventeen years from the water business which he conducted. Respondent also derived an income from rents. During all of the years of their married life, decedent acted as the bookkeeper and treasurer for the funds of the spouses and respondent turned over to decedent all moneys received by him from his employer and from other sources. The bank account was placed in decedent's name and when real estate was acquired, the property was placed in decedent's name. Each of the spouses received a small inheritance subsequent to the marriage and the money thus received was also used in the purchase and improvement of real estate. Aside from the inheritance of $4,400 from her father, decedent contributed no other money to the purchase of any of the property and had no independent income of her own. The money received from the various sources mentioned was commingled together and the spouses acquired and improved numerous pieces of real property therewith, nine parcels of which remained in the name of decedent at the time of her death. This property was referred to by the spouses as "our property" and decedent agreed with respondent that it "belongs to us". She told friends that all of the property was community property and that she and respondent were "pals in everything".

She always told respondent that all of the money and property they had "would be for our old age". Respondent testified that he had absolute confidence in decedent and therefore permitted her to keep the money and property in her name but that he never intended thereby to make her a gift of any of said money or property.

From the foregoing summary of some of the testimony introduced, it is apparent that the court could properly conclude that regardless of the various sources from which the funds were obtained and regardless of the fact that said funds and the real property purchased therewith were placed in the name of decedent, the spouses had agreed that all of said funds and all of said property should be community property. Under these circumstances, the finding that all of said property was community property may not be disturbed. (*Kenney* v. *Kenney*, 220 Cal. 134 [30 Pac. (2d) 398]; *Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214]; *Durrell* v. *Bacon,* 138 Cal. App. 396 [32 Pac. (2d) 644]; *Estate of Sill,* 121 Cal. App. 202 [9 Pac. (2d) 243]; *Estate of Wahlefeld,* 105 Cal. App. 770 [288 Pac. 870]; *Vieux* v. *Vieux,* 80 Cal. App. 222 [251 Pac. 640].)

It appears to be conceded by appellant that if the property was community property, decedent had no power of testamentary disposition over the portion thereof acquired prior to July 16, 1923. (*McKay* v. *Lauriston,* 204 Cal. 557 [269 Pac. 519].) On the other hand, respondent concedes that decedent had the power of testamentary disposition to the extent provided in the 1923 amendment to section 1401 of the Civil Code (now section 201 of the Probate Code) over any portion of the community property that may have been acquired after July 16, 1923. The court decreed that decedent died intestate as to the last-mentioned portion of the community property.

▉ Appellant contends that there was error in the last-mentioned ruling claiming that the "residuary clause" in the will made such intestacy impossible. We are of the opinion, however, that a reading of the will, including the so-called "residuary clause", shows that appellant's contention is without merit. Decedent specifically described certain property in her will and claimed that it was her separate property. Then, after disposing of certain parcels thereof, she gave the

residue of her "said property" to appellant. The word "said" has a definite and well-understood meaning. It relates only to that which is "before mentioned". (Webster's New International Dictionary; Bouvier's Law Dictionary; Black's Law Dictionary; 24 Am. & Eng. Ency. of Law, 2d ed., p. 1014; *Greeley Nat. Bank* v. *Wolf,* 4 Fed. (2d) 67, 69; *Commonwealth* v. *Schweiters,* 122 Ky. 874 [93 S. W. 592, 594].) The so-called "residuary clause", above set forth, clearly related only to the residue of property specifically described in the will and being free from ambiguity, it cannot be construed into a general residuary clause so as to cover after-acquired property not described in the will. (*Blankenbaker* v. *Early,* 132 Va. 408 [112 S. E. 599]; *Noel* v. *Jones,* 185 Ky. 835 [216 S. W. 98]; *In re Alabone's Estate,* 75 N. J. Eq. 527 [72 Atl. 427]; *Wheeler* v. *Brewster,* 68 Conn. 177 [36 Atl. 32]; *Allison* v. *Hitchcock,* 309 Mo. 488 [274 S. W. 798]; Thompson on Construction of Wills, pp. 463, 469, 470.)

Judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1935.