[Civ. No. 12640. First Dist., Div. One. May 23, 1944.]

DANIEL F. McCARTHY, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Albert J. McGuire for Petitioner.

Lloyd J. Cosgrove for executor as real party in interest.

KNIGHT, J.—Petitioner has applied for a writ of prohibition to prohibit the superior court, sitting in probate, from enforcing by execution or contempt proceedings an order made in a proceeding instituted therein under the provisions of sections 613, 614 and 615 of the Probate Code, in the matter of the Estate of Allie C. M. Osborne, deceased.

The facts are as follows: For many years immediately preceding Mrs. Osborne's death, which occurred on March 30, 1942, she conducted a real estate and insurance business on Mission Street in San Francisco under the name of Stewart & Osborne, in connection with which she maintained a com-

mercial account in the name of "Stewart & Osborne, Agent" at the Mission Branch of the American Trust Company. Part of her business consisted of collecting rentals for a great many property owners, which rentals she deposited in her bank account and afterwards drew checks thereon in favor of her clients for the amounts due them. For more than ten years petitioner had been associated with Mrs. Osborne's business in the capacity of a real estate and insurance salesman, working on a commission basis; and he assisted generally in carrying on the business. During such association they bought and sold considerable real property on their own account as joint tenants. Some of the property was income producing, and a few parcels stood in their names as joint tenants at the time of her death. In buying property it often became necessary for them to borrow money on trust deeds and mortgages; and in selling they frequently accepted deeds of trust and mortgages in part payment; so that at the time of Mrs. Osborne's death they were receiving income from real and personal property owned jointly by them, and they were also making payments on outstanding joint obligations. Furthermore at the time of Mrs. Osborne's death certain commissions were due petitioner on unpaid insurance premiums.

About two years prior to Mrs. Osborne's death she executed and delivered to the bank a power of attorney in the usual form required by banks, authorizing petitioner to draw checks on the bank account, and when she became ill and was about to be taken to the hospital, she instructed petitioner to carry on the business for her and to pay the clients of the office from the bank account whatever sums of money were due them. Thereafter and on Saturday, March 28, 1942, petitioner closed the bank account maintained by Mrs. Osborne and transferred the balance therein, amounting to $3,182.31, to a new account which he opened at the same bank in the name of "Stewart & Osborne, by Daniel F. McCarthy." Mrs. Osborne died on the following Monday, March 30, 1942, and during that week and after her death, petitioner drew checks on said account to pay a number of the clients the amounts due them as rental collections. At the end of that week and on April 6, 1942, the executor named in her will and his counsel conferred with petitioner, at which time petitioner informed them fully as to what he had done concern-

ing the bank account; and thereupon they authorized and instructed petitioner to continue on with the business in the usual manner and to account to them from time to time as to its financial condition. Pursuant to that arrangement petitioner remained in charge and operated the business until October 1, 1942, at which time the bank account was exhausted and a disagreement arose over the accounting. Thereupon petitioner filed suit against the executor, asking for a court settlement of the accounts, alleging the existence of a partnership between himself and Mrs. Osborne; but before an answer was filed therein he voluntarily dismissed the suit. The executor then instituted the proceeding in the probate court under the authority of sections 613, 614 and 615 of the Probate Code, by the filing of a complaint on oath wherein he alleged that petitioner had in his possession and under his control, and was concealing, certain sums of money belonging to the decedent's estate, to wit: (1) $3,182.31 withdrawn by petitioner from the American Trust Company; (2) rentals in a sum unknown to the executor but known to the petitioner, collected by petitioner from property owned jointly by the decedent and petitioner; (3) moneys collected on promissory notes secured by trust deeds and mortgages owned jointly by the decedent and petitioner, the exact amount of which was unknown to the executor but known to the petitioner; (4) premiums collected on insurance policies, the amount of which was unknown to the executor but known to petitioner. The complaint then went on to allege that although petitioner had furnished ''various statements and sets of figures, that they do not, nor do any of them constitute an intelligible report or account of the amount, disposition or location of said moneys . . .'' The prayer of the complaint was that petitioner be cited to appear and show cause why he should not (1) return and pay over to the executor ''all money and property held and concealed'' by petitioner; (2) account for all moneys belonging to the decedent which had been disbursed by petitioner, and (3) pay over to the executor ''one half (½) of all moneys collected upon property or obligations owned jointly by'' petitioner and decedent.

In obedience to the citation that was issued by the probate court petitioner appeared in person and by attorney and gave an account of the moneys referred to in the complaint; he also answered all questions put to him concerning the same.

The hearing extended over three separate sessions of the court, with an intervening two weeks between the first and second sessions, and four weeks between the second and third sessions, to enable petitioner to supply a more definite account of the moneys he was charged with having received and disbursed. At the final session petitioner produced an expert accountant whom he had employed to audit the books, and according to the reports furnished by the accountant petitioner was indebted to the estate in the sum of $366.77, which petitioner agreed to pay. The executor refused to accept that amount; whereupon the proceeding was ordered submitted, and thereafter and on December 9, 1943, the court made and entered an order wherein it found that petitioner had "under his possession and in his control the sum of $2,153.24 . . . belonging to the Estate . . ." and that he "should be ordered to pay over" to the executor that amount; furthermore, "that said Executor shall have the aid of contempt process of this Court in the enforcement of this order and that executor [execution] shall issue thereon"; whereupon it was "ordered, adjudged and decreed" that petitioner was "indebted to the Estate of Allie C. M. Osborne, Deceased, in the sum of $2,153.24"; that he pay over to the executor said sum, and the costs incurred herein, and that a writ of execution issue thereon.

■ Under the circumstances we are of the opinion that petitioner is entitled to the issuance of the writ. Sections 613, 614 and 615 of the Probate Code are reenactments of the provisions of sections 1459, 1460 and 1461 of the Code of Civil Procedure in substantially the same language. (*Estate of Escolle,* 134 Cal.App. 473 [25 P.2d 860].) Section 613 provides a means of discovery, by way of citation and examination, in cases where a person is suspected of having embezzled, concealed, smuggled or fraudulently disposed of property belonging to the estate of a decedent; and section 615 provides a method of compelling an accounting under oath by a person who has been entrusted with any part of the estate of the decedent. The remedial powers conferred upon the probate court for the enforcement of the provisions of sections 613 and 615 are embodied in section 614, the pertinent portions of which declare that if the person suspected of having embezzled, concealed, smuggled or fraudulently disposed of the property of the estate refuses to appear and

submit to an examination touching the matters of the complaint, the court, by warrant for that purpose, may commit him to the county jail, there to remain until he submits to the order of the court or is legally discharged. Or if, upon such examination it appears that he has embezzled, concealed, smuggled or fraudulently disposed of any property of the decedent, the court may make an order requiring him to disclose his knowledge thereof to the executor or administrator, and may commit him to the county jail, there to remain until the order is complied with, or he is legally discharged. It appears to be well settled, however, that the power thus granted to the probate court by the foregoing sections ends with the discovery of the property and the enforcement of the remedial powers of the statute, and does not extend beyond that; and that where a dispute arises between the person cited and the representative of the estate as to the title to property, or the amount claimed to be due as the result of the accounting, the probate court cannot in such proceeding determine the issue, nor order property delivered up to the executor or administrator, or to be deposited as the court may order; nor under such circumstances does it have the power to imprison the person for contempt for failure to obey any order so made. (*Ex parte Casey,* 71 Cal. 269 [12 P. 118]; *Koerber* v. *Superior Court,* 57 Cal.App. 31 [206 P. 496]; *Estate of Escolle, supra; In re Ochoa,* 50 Cal.App.2d 457 [123 P.2d 106]; 11A Cal.Jur. pp. 463-468.) A different rule governs where the probate court has determined that funds belonging to an estate are being illegally withheld by an attorney. (*Estate of De Barry,* 43 Cal.App.2d 715 [111 P.2d 728]; *Estate of Troy,* 92 Cal.App. 352 [268 P. 426].)

In the present case, as stated, the petitioner appeared in response to the citation and rendered an account of the moneys and property received and disbursed by him in carrying on the decedent's business; also of the moneys and property owned jointly by him and the decedent; and he submitted to an examination touching all of those matters. The record discloses no evidence showing, nor does the probate court find, that there has been any embezzlement, concealment, smuggling or fraudulent disposal of the moneys or property of the estate. The proceeding resolved itself into a dispute over a matter of accounting, which involved three items for which petitioner claimed credit, to wit: (1) $169.18 claimed to have been paid

out by him as office expenses incurred prior to Mrs. Osborne's death; (2) $1,148.70 claimed to have been paid out by him as operating expenses of the business between the date of her death and October, 1942, when he surrendered the business to the executor; and (3) $468.70 which he claims he had previously paid to the executor as part of the estate's one half of the net earnings received from the joint holdings. Therefore, in view of such dispute and the authorities above cited, the probate court is without legal authority to enforce the collection of those sums of money by execution or contempt proceedings. In other words, as said in substance in *Estate of Olmstead*, 216 Cal. 585 [15 P.2d 495], the object of section 615 is to place the executor or administrator in possession of such facts as would authorize a civil suit to restore the property held by another and claimed to belong to the estate.

It is ordered, therefore, that a writ of prohibition issue herein prohibiting the respondent court from taking further action by way of execution or contempt proceedings for the enforcement of the order entered on December 9, 1943.

Peters, P. J., and Ward, J., concurred.