[S. F. No. 19176.   In Bank.   July 12, 1955.]

CENTRAL BANK (a Corporation), Petitioner, v. SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; SAM PERRY, a Minor, etc., Real Party in Interest.

Fitzgerald, Abbott & Beardsley and Robert S. Rutledge for Petitioner.

No appearance for Respondent.

Lew M. Warden, Jr., for Real Party in Interest.

SHENK, J.—This is an application for the writ of prohibition to prevent the respondent superior court from taking further action in a guardianship matter in which it indicated that in the exercise of its probate jurisdiction it would require the petitioner Central Bank to account for $4,011.71, deposited therein by the guardian in her personal account.

In 1949 in a regular proceeding in the respondent court sitting in probate, Bennie L. Perry, the mother of Sam Perry, a minor, was duly appointed and qualified as the guardian of his person and estate, and furnished the required bond. Thereafter the court approved the compromise of a claim of the minor in an action for damages for personal injuries and

entered the following order pursuant to section 1431 of the Probate Code: "It is further ordered that the net sum remaining, to wit, $4,011.71, be deposited in the Central Bank, . . . in a savings account in the name of said minor with the petitioner [Bennie L. Perry] as trustee thereof, without bond, and there to remain until said minor attains the age of twenty-one years, or upon further order of this court."

A copy of that order was not delivered to the Central Bank and there is no evidence that the bank had knowledge of it prior to the present proceeding. A check in the amount of $4,011.71 made payable to the bank was delivered to the mother, Bennie L. Perry. On the back of the check the following notation had been typed: "To be deposited to the account of SAM PERRY, a minor, with BENNY L. PERRY, as Trustee, said funds to remain until SAM PERRY attains the age of twenty-one years, or upon further order of Court." The mother, without authority of court or otherwise, presented the check to the Central Bank for deposit in her own personal account and the amount thereof was so credited. On the reverse side of the check are two obviously rubber stamp endorsements, the first being, "Credited account of within named payee, absence of endorsement guaranteed by Central Bank, Oakland, Calif.," and the second, "Pay to the order of any Bank, Banker or Trust Co. All prior endorsements guaranteed. Apr. 20 '49 4001. Central Bank, Oakland, Calif." The check bears the notation "PAID" by perforation.

Thereafter the mother withdrew those funds (with the exception of $5.00 or less) from her personal account and converted them to her own use. The father of the minor child, who is the divorced husband of the mother, obtained information of the defalcation on the part of the mother and prepared to take proceedings against her to compel her to restore and preserve the funds for the benefit of the minor The mother then, in her capacity as guardian of the minor and in his behalf, brought an action against the bank to compel it to pay into an account for the benefit of the minor the amount of money which she had converted to her own use from the proceeds of the check. The complaint stated facts above set forth and further alleged that "plaintiff is informed and believes and therefore alleges that the defendant has concealed and converted to its own use the aforesaid sum of money due and owing to the plaintiff." The prayer was that a citation issue, and the following citation was issued

14

and directed to the bank: "You are hereby cited and required to appear in the above entitled proceeding . . . , then and there to show cause, if any you have, why you should not be required to be examined and to do the acts as prayed for in plaintiff's complaint herein."

Section 1552 of the Probate Code, relating to guardianship proceedings authorizes a court to cite a suspected person and to "examine and proceed against him on such charge in the manner provided in this code. . . ." The court purported to proceed under that section and sections 613, 614 and 615 of the Probate Code. These latter sections relate to probate proceedings and as applicable here provide for the citation and examination of one to whom assets of an estate have been entrusted. The court may require such a person "to render a full account, on oath, of any moneys, accounts, or other property or papers belonging to the estate, which have come to his possession, and of his proceedings thereon. . . ." (Prob. Code, § 615.)

A hearing was had on the citation at which testimony was taken. The court later filed a memorandum in which it announced its intention of making a finding that the bank had notice of a trust impressed upon it and that it held the sum of $4,011.71 for the account of the minor. Thereupon the bank commenced the present proceeding and an alternative writ was issued.

The primary question is whether the respondent court sitting in probate can adjudicate a controversy between the bank and the guardianship estate under the undisputed facts, or whether the controversy must be decided by the court in the exercise of its general jurisdiction. ▪ It is the general rule that the superior court while sitting in probate is without power to decide a disputed claim between an estate and a stranger thereto. (*Schlyen* v. *Schlyen,* 43 Cal.2d 361, 372 [273 P.2d 897]; *Estate of Dabney,* 37 Cal.2d 672 [234 P.2d 962].) The same rule applies to guardianship proceedings under the Probate Code. (Prob. Code, § 1552.) ▪ But if the controversy is between an estate and those not strangers to probate proceedings relating to the estate, the court sitting in probate has power to entertain the action and adjudicate the conflicting claims. In such a case the contest is often referred to as between those in "privity" with the estate. In the Schlyen case (*Schlyen* v. *Schlyen, supra,* 43 Cal.2d 361) it is said at page 373: "The reasons for the . . . rule run through the numerous cases on the subject and are many.

The determination of such a controversy is an incident to the proper settlement of the estate. (*Stevens* v. *Superior Court, supra,* 155 Cal. 148 [99 P. 512].) All of the parties to the proceeding are in privity with the estate and it is their distributive rights that are affected by the proceeding in probate. . . . It is because of the foregoing and perhaps other reasons that the courts have said that a controversy of this nature should be adjudicated in probate. It is certainly true that the court in a probate proceeding is concerned with the settlement of the estate and not with controversies between the estate and strangers, the adjudication of which is the function of the court in the exercise of its general jurisdiction.''

From the foregoing it follows that controversies properly within an estate proceeding should be adjudicated therein, that is, as necessary incidents of the proceeding. The question then is whether the bank in this case is in ''privity'' with the guardianship estate in the sense that the term has been employed in the decisional law on the subject.

A review of the decisions reveals that in those cases where a controversy has been held to have a sufficient connection with a pending probate proceeding to be properly litigated therein the controversy is one of two particular types. The first and most common is that between the estate or those acting in its behalf and the executor or administrator thereof acting in his personal capacity. (*Schlyen* v. *Schlyen, supra,* 43 Cal.2d 361; *Estate of Roach,* 208 Cal. 394 [281 P. 607] ; *Bauer* v. *Bauer,* 201 Cal. 267 [256 P. 820] ; *Estate of Fulton,* 188 Cal. 489 [205 P. 681] ; *Stevens* v. *Superior Court,* 155 Cal. 148 [99 P. 512] ; *cf. Estate of Klumpke,* 167 Cal. 415 [139 P. 1062], where the court apparently overlooked the fact that the surviving spouse was also the personal representative.) The propriety of the determination by the court sitting in probate in such a situation is said to be ''implied in the power to settle the final account'' and the ''power to determine as against an executor what property in his hands belongs to the estate.'' (*Stevens* v. *Superior Court, supra,* 155 Cal. 148, 151; see also *Guardianship of Vucinich,* 3 Cal.2d 235, 243 [44 P.2d 567, 45 P.2d 817] ; *cf. Estate of Haas,* 97 Cal. 232 [31 P. 893, 32 P. 327], distinguished and limited by *Stevens* v. *Superior Court, supra,* at p. 152, and by *Estate of Burdick,* 112 Cal. 387, 391 [44 P. 734].) The essential privity in those cases is that arising out

of the nature of the relationship existing between the parties to the controversy. It is often stated that the power of the court in such situations is limited to those cases "where the executor or other personal representative claims the property in his individual capacity." (*Guardianship of Vucinich, supra,* 3 Cal.2d 235, 243; see also *Wilkerson* v. *Seib,* 20 Cal. 2d 556, 562 [127 P.2d 904].) In any event we are referred to no case wherein the essential relationship of the parties to an estate has been extended to include any other than an executor or administrator except perhaps in the case of one purporting to assert a personal right derived through the executor's or administrator's official capacity. Thus in *Estate of Troy,* 92 Cal.App. 352 [268 P. 426], the rule was applied to the claim of an attorney of the representative of the estate into whose hands property of the estate had come, and in *Estate of DeBarry,* 43 Cal.App.2d 715 [111 P.2d 728], it was held that where the attorney was deceased the court sitting in probate could properly determine the validity of a similar claim asserted by the attorney's estate. (See also *Estate of Kafitz,* 51 Cal.App. 325 [196 P. 790].) But the rule has not been extended to include others, as for example, a surviving spouse of a decedent, where he or she was not also the representative of the estate although such surviving spouse may or may not also have been an heir of the estate with respect to other property than that involved in the immediate controversy. (See *Estate* of *Niccolls,* 164 Cal. 368, 373 [129 P. 278]; *Merola* v. *Superior Court,* 125 Cal.App. 2d 1, 4 [269 P.2d 664]; *Wilson* v. *Superior Court,* 101 Cal. App.2d 592 [225 P.2d 1002]; *Estate of Kurt,* 83 Cal.App. 2d 681, 683 [189 P.2d 528].) And it has been held that where one claims all the assets of an estate undergoing probate proceedings to be his property by virtue of a partnership agreement with the decedent he is a stranger to the estate and cannot be heard to assert such claim in those proceedings (*Estate of King,* 199 Cal. 113 [248 P. 519]; *Estate of Abdallah,* 80 Cal.App.2d 634 [182 P.2d 596].)

The other situation in which the court sitting in probate has been held to be the proper tribunal in which to determine controversies involving particular property claimed by the estate and others is that where the property involved is conceded by both parties to be or to have been acquired by the claimant in the course of probate proceedings. The essential element of privity in such cases arises out of the nature of the claim to the property, rather than the nature of

the relationship of the parties involved as in the first situation. Thus in *Heydenfeldt* v. *Superior Court*, 117 Cal. 348 [49 P. 210], the rule was applied to a distributee who had received property of the estate under a decree afterwards set aside. And in *Estate of Troy, supra*, 92 Cal.App. 352 and *Estate of DeBarry, supra*, 43 Cal.App.2d 715, the attorneys for the representatives of the estates admittedly withheld assets of the estate but claimed they were entitled to do so as setoffs against their purported claims for fees due them. Privity of this nature is also recognized in a line of cases involving the transfer of community property upon the death of one spouse. It is stated that the surviving husband's claim to his share of community property is adverse to the estate as it is not subject to administration and does not pass through probate proceedings. (*Makeig* v. *United Security Bank & Trust Co.*, 112 Cal.App. 138 [296 P. 673].) As such he is not claiming in privity with the estate but adversely to it since his community interest does not pass through the probate proceedings and his claim cannot be litigated therein if objection be made. (*Estate of Klumpke, supra*, 167 Cal. 415, 421; *Estate of Kurt, supra*, 83 Cal.App.2d 681, 683; see also *Estate of King, supra*, 199 Cal. 113, 117-118.) But a surviving wife's claim to her share of the community property is said to come to her through probate (Prob. Code, § 202) so that her claim is in privity with the estate and should be litigated therein. (*In re Burdick, supra*, 112 Cal. 387; *Estate of Kurt, supra*, 83 Cal.App.2d 681, 684; *Colden* v. *Costello*, 50 Cal.App.2d 363 [122 P.2d 959].)

In the present case there is no relationship between the bank and the estate such as would bring the bank into privity similar to that of the representative of the estate, and no reason appears why the doctrine should be broadened to include one who stands in the position of the bank. Nor does privity attach by the nature of the claims asserted to particular property conceded to be or to have been derived through the guardianship proceedings. It is claimed by the guardian but vigorously denied by the bank that it had notice of the trust condition imposed on the fund or that the money thereof was deposited as an asset of the guardianship estate It is without question that the $4,011.71 represented by the check was deposited in the personal account of Bennie L. Perry and had been dissipated by withdrawals by her to the point where for all practical purposes that particular fund no longer exists. The bank refuses to concede that the

money now sought was derived through the guardianship estate. Its claim of right to title to the fund sought by the plaintiff is entirely independent of the guardianship proceedings and does not fall, therefore, into that class of privity with estate proceedings arising out of the nature of the claims asserted by the parties.

As stated, the proceedings in the respondent court purport to have been commenced under the authority of sections 613-615 and 1552 of the Probate Code. Where the persons cited to appear and account in such proceedings are strangers to the estate the code sections create no exception to the rule requiring that the controversy be determined by the court in the exercise of its general jurisdiction. The power which they confer on the court sitting in probate ends with the discovery of the property and the enforcement of the remedial powers of the statute. Pursuant to such authority the court cannot determine issues of title nor order property to be deposited or delivered to the executor or administrator. (*Ex parte Casey*, 71 Cal. 269, 271 [12 P. 118] ; *Merola* v. *Superior Court, supra,* 125 Cal.App.2d 1, 4; *McCarthy* v. *Superior Court,* 64 Cal.App.2d 468, 472 [149 P.2d 55].)

From the foregoing it follows that the controversy in the present case is one which properly should be determined by the court in the exercise of its general jurisdiction. The bank does not deny that as a stranger to the estate a claim against it may be adjudicated independently of the guardianship proceeding. Such an action was in fact commenced against the bank in the respondent superior court on March 8, 1954, by Sam Perry, through his mother as his guardian. That action is now pending and summons has been issued. Its purpose is the recovery of the identical fund sought in the guardianship proceeding.

Not only is the foregoing conclusion compelled by an analysis of the decisional law, but also it is the better rule for practical reasons and in fairness and justice to the parties. The only allegation as to the liability of the bank is that it has ''concealed and converted to its own use the aforesaid money due and owing the plaintiff.'' The action is one in which issues of fact have been joined and bears all the earmarks of an action in conversion. (See *Lowe* v. *Ozmun,* 137 Cal. 257, 260 [70 P. 87] ; *Perkins* v. *Maier & Zobelein Brewery,* 134 Cal. 372, 375 [66 P. 482] ; 24 Cal.Jur. 1038 and cases there cited.) As such it is an action at law (24 Cal.Jur.

1034) and subject to a demand by either party for a trial by jury (Const., art. I, § 7; see *Vallejo & N. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 556 [147 P. 238]; *Koppikus* v. *State Capitol Comrs.,* 16 Cal. 248, 249; 15 Cal.Jur. 323, 325), and to the right of an appeal from a judgment on issues properly framed. In *Ex parte Casey, supra,* 71 Cal. 269, the court sitting in probate had ordered Mrs. Casey to pay over to an estate certain monies which she claimed to have come to her independently of the probate proceedings. She refused to obey the order on the ground that the court lacked authority to make it in a proceeding pursuant to sections 1459, 1460 and 1461 of the Code of Civil Procedure (now Prob. Code, §§ 613, 614, 615), and was cited for contempt. On appeal this court held that the trial court could not hold Mrs. Casey in contempt unless it could properly determine title to the property, which it could not do in a probate proceeding. As reason for its decision the court stated at page 270: " 'The title upon which his adverse claim was founded may be invalid. It may have been obtained by fraudulent and corrupt practices. It is a principle which underlies all institutions and forms of government, that no man can be deprived of his property, except in proceedings according to law, unless it be confiscated for the necessities or good of the public. If his title is claimed to be invalid or fraudulent and void, he is entitled to be heard according to the forms of law. Proceedings to punish him for contempt for not delivering it up without a trial according to law, to another who claims it, are not the appropriate proceedings for the trial of an issue of title. The issue as to such title should be tried in an appropriate action, in which the verdict of a jury or the findings of the court may be had upon issues properly framed for the purpose of definitely determining the question of title.' (*Ex parte Hollis,* 59 Cal. 405, 406-413.)'' (See also *Wilson* v. *Superior Court, supra,* 101 Cal.App.2d 592.) It is to be noted, of course, that had the bank in the present case refused to obey the threatened order of the respondent court it would have found itself in the same position as Mrs. Casey. The same reasons are here present for requiring that title to the fund involved be tried in the court in the exercise of its general jurisdiction.

It is concluded that the respondent court sitting in probate could not properly adjudicate the rights of the claimants to the fund in the guardianship proceedings, and that it was the duty of the court, when objection to its jurisdiction

was, as here, timely made, to have transferred the cause for trial or to have tried it as a court sitting in the exercise of its general jurisdiction where a jury could be made available and an appeal taken from the judgment in the usual course.

Let the peremptory writ issue for the limited purpose of prohibiting the respondent court from adjudicating the pending cause in the exercise of its probate jurisdiction.

Gibson, C. J., Carter, J., Traynor, J., and Schauer, J., concurred.

The petition of the real party in interest for a rehearing was denied August 11, 1955.