[Civ. No. 22379. Second Dist., Div. One. Nov. 19, 1958.]

Estate of PLOMA C. JOSLIN, an Incompetent Person. HELEN M. CONVERSE, as Guardian, etc., Appellant, v. DEPARTMENT OF MENTAL HYGIENE et al., Respondents.

*Assigned by Chairman of Judicial Council.

Helen M. Converse, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Ariel C. Hilton, Deputy Attorney General, for Respondents.

LILLIE, J.—Helen M. Converse, removed guardian, appeals from an order entered after a hearing on her final account, surcharging her $7,415.90.

The issues raised herein have their genesis in the establishment in 1941 of a guardianship for Ploma C. Joslin, incompetent, presently confined in Camarillo State Hospital, and subsequent difficulties in the administration of her estate. Since appellant, in her final account, sought to have the probate court review items in accounts long since settled, and determine her personal claim to most of the estate assets, we set forth a fairly detailed account of her administration of the estate. No reporter's transcript has been filed. The record on appeal includes two clerk's transcripts, one containing 393 pages, and one heretofore filed in a prior appeal of 122 pages.

M. E. Joslin, her husband, was Ploma's first guardian. Upon his resignation, her mother, Alameda Converse, was appointed on September 14, 1942. During her tenure, and on July 2, 1945, Alameda executed a gift deed to real property (hereinafter called the "duplex") to Ploma, which was recorded July 5, 1945, which was later taken into the incompetent's

estate as an asset. A month later Alameda died. Byron J. Converse, brother of the incompetent and son of Alameda, was then appointed guardian and upon his death his widow, Helen, appellant herein, became Ploma's guardian on November 15, 1946.

Appellant's first and final account included the two prior guardianships, which was settled by the court January 21, 1949. A sum of $14,250.67, exclusive of realty, remained in the estate.

In June, 1950, appellant petitioned the court for instructions concerning repairs on the duplex, which the court authorized, not to exceed $3,039.08. Appellant then sold the duplex for $9,000; $1,500 cash and a $7,500 first trust deed at 6 per cent interest payable $75 per month. The court made an order confirming the sale on November 8, 1951.

Up to this point, appellant had been represented by various counsel, but on October 10, 1951, she filed in propria persona account current for the period between July 1, 1948, and July 15, 1951. To this account the custodial guardian of the incompetent, State Department of Mental Hygiene, filed objections on the ground that appellant's method of accounting was so unintelligible it could not be determined what assets remained in the estate; and that she requested payment to herself of $5,935.47 in connection with a court action she purportedly brought on behalf of the incompetent. The department objected that she had no court permission to engage in litigation, there was no benefit shown to the estate, and having debited herself with $14,436.60 in assets together with the duplex and an undivided one-half interest in unimproved realty, she had only $1,648.39 left in the estate, although rents in excess of $2,000 had been received. At this stage of the proceedings the probate court advised appellant to secure counsel and prepare an amended accounting, which amended account current she filed April 4, 1952. The Department again objected that there was no accounting for the sale of the duplex for which $1,500 cash was received; and that credit was requested for improvements of $3,962.60, whereas the court authorized only $3,099.08, and $714.77 for investigation of which only $250 was authorized; and requested that since appellant prayed for $7,022.74 plus attorney fees, she be put on her proof of the individual items expended by her.

The hearing on the amended account and objections began May 12, 1952. Appellant appeared with counsel and the Department was represented by the attorney general. The

trial lasted eight days. Extensive oral and documentary evidence was received and after arguments of counsel, the trial court entered its minute order July 16, 1952, settling the amended account as corrected, allowing $500 each for guardian and attorney's fees, denying fees for accounting and reimbursements, surcharging appellant $4,835.69, and suspending her powers as guardian. (This order is hereinafter referred to as the order of September 30, 1952.) In a memorandum opinion, the trial judge declared that the "accounting in no way conformed to the type required in the administration of estates in carrying forward balances showing receipts or accounting for property on hand;" and that appellant "has shown considerable difficulty in distinguishing between personal and estate transactions." He continued that it "became necessary to reconstruct the account from the figures available in the accounting itself and from evidence solicited from the guardian and her accountant"; that the testimony of the guardian and her accountant was vague, conflicting and complicated by the fact she personally owned realty adjoining that operated by her as guardian which she improved, operated and sold with that belonging to the estate as a unit, although the records of the estate show the sale of the estate's interest as a separate unit; that she was evasive as to property on hand, uncertain as to many items of personal property and could not remember where they were or if they had been sold; and that the guardian's own testimony "leads one inescapably to the conclusion that she was either grossly wasteful in the management of the estate property or had deliberately charged to the estate property items that were not properly chargeable thereto." After disallowing $3,886.17 worth of excessive, unnecessary and erroneous expenditures the court found her chargeable as of April 1, 1952, with $20,079.31. Accordingly, on October 1, 1952, findings and order were filed and entered October 6, 1952. From this order (September 30, 1952) no appeal was then taken.

On September 12, 1952, the State Department of Mental Hygiene filed its petition for the removal of appellant as guardian, setting forth the fact of her accounting, suspension of powers, mismanagement of estate property and the surcharge. She was served with a citation to appear in court. Various continuances were granted. On November 20, 1952, the department was appointed special guardian and another citation was issued to appellant to show cause why she should not turn over the assets to the department. After another

continuance and two more substitutions of counsel, appellant finally appeared in propria persona and on March 11, 1953, after a hearing, the petition for removal was granted and appellant was ordered to file her final account, turn over all assets to the department as special guardian and return to court March 18, 1953. On that day she failed to appear and a bench warrant was issued. On March 23, 1953, the court made its findings and order removing appellant as guardian effective March 11, 1953. Among other things, the probate court found that appellant had failed to disclose the whereabouts of certain cash assets and refused to provide court or counsel with her address; that she had mismanaged the estate, failed to render an account in accord with recognized estate practices; and removed property from the estate without permission of the court. She was ordered to prepare and file a final accounting covering the period from April 1, 1952, through March 11, 1953, and immediately turn over all assets to the department. Appellant's motion for new trial was heard and denied June 8, 1953.

On April 30, 1953, appellant was brought to court on the bench warrant, found in contempt and remanded to the county jail. Thereafter, on May 18, 1953, she was again remanded to jail for failure to turn over assets to the special guardian. On May 19, 1953, her counsel delivered the same.

Appellant appealed from the order of March 11, 1953, removing her as guardian and appointing the department in her place. (On April 5, 1955, the remittitur of this court was filed dismissing the appeal and awarding costs to the respondent.)

On August 7, 1953, appellant filed amended current account of former guardian for the period from April 1, 1952, to March 11, 1953, alleging a $1,981.25 indebtedness to her and personal title to and ownership of the following items, consisting of most of the estate, at all times heretofore listed by her as a part thereof: a $418.76 account in the Southern California Building and Loan Association, and the note secured by the $7,500 deed of trust. She asked the probate court to eliminate these assets from the estate and declare them as her own personal property. She also sought reimbursement from the estate for funds she claims she paid out for the incompetent from 1948 through 1950. The department filed exceptions thereto but due to the pendency of the appeal from the order of March 11, 1953, the hearing was continued from time to time.

On June 29, 1955, the amended account and objections thereto were heard. Appellant, the department, the special guardian and the bonding company were represented by counsel. The probate court ordered that no evidence be received on the account because it was unintelligible and covered by the previous order of September 30, 1953. On July 13, 1955, the court filed its order disapproving appellant's amended account current, and requiring her to file another account covering the same period, from April 1, 1952, to March 11, 1953, starting with $20,379.31.

On August 24, 1955, appellant filed a lengthy final account. In the first six pages she attempted to account for the period between April 1, 1952, and March 11, 1953; in the next two, she listed ''assets belonging to the within estate and Helen M. Converse personally, now in the hands of the Department of Mental Hygiene''; in the following 17 pages, she listed claims and expenditures (monies she claimed she paid out on behalf of the incompetent from 1948 to the present) heretofore presented in previous accounts and disallowed; and in the balance of the document appellant made personal claim to the duplex and all rental paid thereon, on the following grounds: she and her husband had paid off a $3,000 mortgage on the property in 1926, Alameda retained only a life estate in the property and its income and could not deliver the deed thereto, appellant inherited from Byron a $525 lien on the property, and Alameda in 1941 sued the incompetent to quiet title in herself to all property, including the duplex, and then left it upon her death to Byron who left it to appellant.

Objections to this final account were filed by the department and the matter was heard in the probate court. Appellant was present and represented by counsel, as was the department, the general guardian. The probate court found that as of March 11, 1953, appellant was required to account for $20,379.31 and that she delivered to the general guardian assets in the sum of $12,163.41, leaving $8,215.90 and the deed to the unimproved real estate to be accounted for. The trial court refused to consider the matters referred to in the final account, pages 8 through 39 thereof and her claim to the estate assets, and ordered that she be surcharged $7,415.90. The findings and order were entered January 9, 1956. Appellant's motion for new trial was denied March 19, 1956.

Appellant in propria persona filed her notice of appeal April 17, 1956. Therein she purports to appeal from orders

entered in this case from October 1, 1952, through January 9, 1956, specifically naming the following: order denying motion for new trial entered March 19, 1956; order on final accounting for period of April 1, 1952, to March 11, 1953, entered January 9, 1956; notice of judgment entered January 23, 1956; order directing appellant to turn over assets to special guardian entered July 13, 1955; order entered March 25, 1953; judgment entered April 22, 1953; order of appointment of Department of Mental Hygiene as guardian entered May 23, 1953; and order of October 1, 1951, entered October 6, 1952.

Time for filing appeal having expired in connection with the order of October 1, 1952, entered October 6, 1952; and order entered July 13, 1955 (rule 2a, Rules on Appeal); the notice of judgment entered January 23, 1956, not being appealable; and appeal heretofore taken from orders entered March 25, 1953; April 22, 1953; and May 23, 1953, having been dismissed (April 5, 1955), there is now pending before this court only appeal from order entered January 9, 1956, and order denying motion for new trial entered March 19, 1956. This is apparently appellant's own understanding of the status of her appeal for at the outset she predicates her arguments on an appeal from "order of the superior court on a judgment in a guardianship proceeding, surcharging the appellant with $7,415.90."

Appellant has filed briefs containing a mass of extraneous and irrelevant facts and material. She presents seven questions on appeal, most of which are of a factual nature and seek to go into the merits of her claim to estate assets, which are not properly before this court. However, we deem her main position to be that the probate court in hearing her final account erred in refusing—1. to review transactions, expenditures and claims litigated on previous intermediate accounts and made the subject of prior orders, and repeated in 17 pages of her final account; and 2. to hear her personal claim of title to the property of the estate.

A reading of the final account discloses a long, rambling, disconnected, and at times almost incoherent document relating to her administration of the estate since 1946, 33 pages of which contain a garbled account of her purported expenditures on behalf of the incompetent as far back as 1947, and her request that the court review these and further items which she indiscriminately designated as "surcharges," "corrections," "mistakes made by the court," "mistakes made in past accounts," and "lack of proof for ground of removal,"

all of which have heretofore been presented on former accounts, thoroughly litigated in adversary proceedings, disallowed, settled and made a part of previous orders. She presented therein no reasonable explanation for review of these matters other than that she wanted reimbursement for monies she claimed she paid out on behalf of the ward since 1946; offered no basis for correcting "mistakes" made by her or the court; and gave no justification for her delay in claiming the estate property as her own after having administered the estate including these assets since 1946.

The probate court found "that those matters referred to on pages 8 through 39 constitute an attempt by Helen M. Converse, the removed guardian, to establish herself as the owner of the assets of said estate contrary to her own accounts, adverse to her ward and as a stranger in the probate court, and have been the subject of a full hearing as set forth by the order of September 30, 1952, from which no appeal was taken; that none of these matters are proper for the consideration of the court at this time."

We are here confronted wtih the final account of a "removed" guardian who assumed this status on March 11, 1953, when appellant, for mismanagement of estate funds, was removed by order of the probate court. ██ An order removing a guardian is self-executing and if not appealed from, it is a final judgment. (*Hibernia Sav. & Loan Soc.* v. *Belcher,* 4 Cal.2d 268 [48 P.2d 681].) Although appellant appealed from the order removing her, on April 5, 1955, the remittitur of this court was filed dismissing the appeal. The order having become final, appellant is now precluded from relitigating the matter of her removal.

Appellant argues that in settling the final account the probate court was required to go into the various matters of surcharge, expenditure, debits, credits and transactions heretofore presented and settled in past accounts, for the reason that an intermediate settlement of a guardian's account is not final, and all matters may be reviewed.

██ There is little question but that annual accounts of a guardian, although approved and settled by the court, generally do not have the force and effect of a final judgment. The rule in California was established by the Supreme Court in *Guardianship of DiCarlo,* 3 Cal.2d 225 [44 P.2d 562, 99 A.L.R. 990], wherein the court disapproved the contrary rule of *Guardianship of Wells,* 140 Cal. 349 [73 P. 1065], and reaffirmed *Guardianship of Cardwell,* 55 Cal. 137. It stated

at page 227: "In our opinion, the proper rule is that such accounts are not conclusive against the ward, and *may* be reexamined" (emphasis added). The Supreme Court, adopting the opinion of the District Court of Appeal, held that the settlement of a guardian's intermediate account is not conclusive but operates only as an admission against interest of the guardian and is prima facie evidence against him, liable to be corrected, rebutted or explained; and stated at page 232: "the weight of authority favors the conclusion that by its order of settlement of the former account rendered by the guardian, the probate court was not precluded from a reexamination thereof, and that on such reexamination it had the power and authority to correct, revise or modify in any amount any item or items of expenditure theretofore settled, allowed, or approved by it, or to entirely disallow and withhold its approval or settlement of such item or items." In distinguishing the guardianship case from estate and trustee cases, the court reasoned "that the ward is a person under legal disability and ordinarily unable to protect himself against overreaching or other improper conduct of the guardian. This distinction is sufficient to justify an exception to the normal application of the principle of res judicata." To the same effect is *Guardianship of Vucinich*, 3 Cal.2d 235 [44 P.2d 567], *Estate of Giambastiani*, 1 Cal. App.2d 639 [37 P.2d 142]; *Estate of Eaton*, 38 Cal.App.2d 180 [100 P.2d 813]; *Guardianship of Stallings*, 85 Cal.App.2d 443 [193 P.2d 114]; *Guardianship of Thrasher*, 105 Cal.App. 2d 768 [234 P.2d 230].

 However, the doctrine appears to have been used almost exclusively to protect the ward. The rule is predicated on the fact that periodical accountings of a guardian are filed ex parte without notice, proceedings allowing them are without hearing, the ward is not represented in the ordinary case, is legally and usually actually incapable of protecting his own interests and that it would be unjust to make annual accounts conclusive against him. It is interesting to note that in each case in which the probate court went into prior accounts, it did so to reduce the amount of credit allowed the guardian or to disallow credits already given, and then the reexamination involved only one or two items. The appeal in each instance was by the guardian from an order obtained as a result of a reexamination of a prior intermediate account, not from an order refusing to reexamine on behalf of the guardian.

██ It seems probable, however, from a reading of these authorities that only the ward should be permitted to take advantage of reopening and reexamination of intermediate accounts. The reason that such accounts are not res judicata against an incompetent, who has had no day in court and no opportunity to examine and question the guardian charged with the trust of his assets, does not exist for exempting a guardian from the operation of res judicata, particularly in a case in which the intermediate account sought to be reviewed was the subject of a long contested hearing in which both guardian and ward were represented. On the same theory of protecting the interests of the ward, there must be some end to the turmoil an irresponsible guardian can create by continuously, even after removal, relitigating and renewing old claims against the estate; otherwise a ward's property could be tied up in such litigation indefinitely. ██ It would appear also, in the interest of terminating litigation, that a guardian should be estopped from changing his position from time to time creating a whole new set of claims and credits against and adverse to his prior sworn accounts. No case we have found holds that when an intermediate account is once settled the guardian can thereupon completely ignore the prior account and relitigate all of the items, claims and expenses previously presented therein, disallowed and covered by prior orders. We do not believe that the rule of reexamination was meant to be used in such a case, otherwise no ward's estate would be free from unfounded claims, extended specious litigation and the harassment of a dissatisfied or dishonest guardian. The matters gone into on prior accounts in the cases we have reviewed concerned something previously overlooked or information withheld by the guardian and then related only to one or several items. We know of no instance in which the guardian was permitted to relitigate full accounts already determined. Only one authority, *Estate of Jacobson*, 56 Cal.App.2d 255 [132 P.2d 229], even comes near suggesting that changed conditions might warrant a corrected accounting by the guardian, but this again involved only a singular matter, and, in addition, was only dictum in the case. On the other hand, *Guardianship of Blair*, 139 Cal.App. 2d 832 [294 P.2d 521], presents an example of finality of an intermediate account. The court therein said at page 835: "It is fundamental that there must be an end to all litigation."

██ Even if the doctrine of exemption from res judicata were applied to guardians, and the probate court was free

to reopen and reexamine on their behalf a multitude of matters already litigated on prior accounts, it appears from the record in this case, disclosing extensive litigation, and protracted adversary hearings in which all parties had ample opportunity to be heard and were represented, that the court did not abuse its discretion in refusing to do so. That it is a discretionary matter cannot be doubted under the language of the DiCarlo and Vucinich cases, *supra*. The Supreme Court held that such accounts ''may'' be reexamined, and in other cases, the courts have employed similar terminology, that the probate court has ''power and authority'' to reexamine, and was not ''precluded'' from correcting, revising or modifying past intermediate accounts. In these cases the probate court exercised its discretion by inquiring into and reexamining prior accounts—in the instant case, the court refused to do so.

Appellant, in effect, is asking the court to completely ignore and cast aside all orders made by it since 1947, relating to settlement, surcharge, suspension and removal, and start anew with a full set of claims and debits which were heretofore submitted to the court and disallowed. She is also seeking indirectly, a review or rehearing of her order of removal, which has long since become final. Obviously, to now disturb prior judicial determination of credits, debits, charges and assets would be to disturb the very basis of the order removing appellant as guardian.

The probate court found that the matters in her final account, pages 8 through 39 constituting the greater part of the account, have already ''been the subject of a full hearing as set forth by the order of September 30, 1952.'' The ''full hearing'' to which it refers was an eight-day adversary proceeding at which all parties were present and represented by counsel. The trial court's memorandum opinion discloses the extent of the hearing, the serious problems involved and the fair and extensive consideration given the appellant. In addition to surcharging appellant and suspending her powers, the trial judge might well have taken a more emphatic stand. The issues represented by the rejected material in the final account are identical with those previously determined. She merely presented again the same claims heretofore disallowed. We can only conclude, from the record before us, that the determination of the trial court on the hearing on the final account, precluding appellant from going back into the case to 1947 and retrying various issues of credits, debits, ex-

penditures and claim of ownership of the property, was not the result of an abuse of discretion.

As to appellant's personal claim of title to the estate property—prior to filing her final account, she at no time ever made such a claim. Actually, her failure to do so prior to her removal would seem to constitute, at least indirectly, her affirmative assertion that the entire assets, including those she is now claiming, belong to the estate; indeed, all of the property to which she now asserts title was at all times listed by her as belonging to the incompetent. Since 1946, the parties acted and the court dealt with the property and settled all matters and items related thereto, in reliance on her representation in her various sworn accounts that the property belonged to the ward.

The element of good faith here seems to be a serious factor with which the probate court might well have concerned itself in deciding whether to hear appellant's claim of title on the hearing on her final account. For six years before, appellant served as guardian and she at no time made claim to the estate property adverse to the ward. During her tenure, she at all times dealt with the duplex as an estate asset, collecting rents, making repairs and finally selling it with the permission of the court, and accepting the profits from the sale into the estate. She now suddenly claims title to the duplex through the wills of Alameda and Byron, who died in 1945 and 1946, respectively. Her first claim to the property was made August 7, 1953, when she first filed her final account, over a year after her powers were suspended and five months after her removal. In her final account she relates a lengthy and somewhat complicated factual basis for her claim, but fails to give any reasonable justification for her delay in asserting it. In the absence of a more compelling reason for her delay, the claim appears to be an obvious effort on her part to avoid responsibility for her prior mismanagement of the estate and another surcharge. Her apparent reasoning was that if she prevailed and the court recognized her claim of title its order, of necessity, would completely wipe out any prior surcharge, all previous findings of mismanagement, her removal as guardian and relieve her of the necessity of having to account further. Her contention, on its face, reflects pure and simple a situation in which a guardian, having failed to convince the court of the merit of her prior claims, credits and expenses, and having been required by the court to make

a full accounting of monies received, in order to attempt to escape liability therefor, as a last resort made claim to the assets in her individual capacity.

Aside from the matter of discretion, was the probate court required to hear and determine appellant's claim of title on the hearing of the final account? As to jurisdiction, it is unquestionably clear that the superior court sitting in probate is without power to determine title to property as between the estate, heirs or devisees, and a stranger to the estate. (*Schlyen* v. *Schlyen*, 43 Cal.2d 361 [273 P.2d 897]; *Waterland* v. *Superior Court*, 15 Cal.2d 34 [98 P.2d 211]; *Estate of Dabney*, 37 Cal.2d 672 [234 P.2d 962]; *Wilkerson* v. *Seib*, 20 Cal.2d 556 [127 P.2d 904]; *Merola* v. *Superior Court*, 125 Cal.App.2d 1 [269 P.2d 664].)

As well settled is the rule that "if the controversy is between an estate and those not strangers to probate proceedings relating to the estate, the court sitting in probate has power to entertain the action and adjudicate the conflicting claims." (*Central Bank* v. *Superior Court*, 45 Cal.2d 10, 14 [285 P.2d 906].) There are a variety of reasons for this rule, the most obvious of course being that the determination of such a controversy is an incident to the proper settlement of the estate. (*Stevens* v. *Superior Court*, 155 Cal. 148 [99 P. 512]; *Schlyen* v. *Schlyen*, *supra*; *Guardianship of Vucinich*, 3 Cal.2d 235 [44 P.2d 567].) In the instant case, we recognize that regardless of her removal, appellant had a duty to prepare and file her final account, turn over all assets of the estate, account for all estate- property and pay any amount with which she might be held liable. Also, while a judgment outside probate would be binding only on the parties thereto, if the matter be determined in probate, the judgment would be conclusive against all persons interested in the estate. (Prob. Code, § 931; *Schlyen* v. *Schlyen*, 43 Cal.2d 361 [273 P.2d 897].) This also disposes of the practical problem of having the claimant become both plaintiff and defendant in a general action—plaintiff for his adverse claim, and defendant as resistant to the claim and representative of the estate.

It appears from the cases on this subject that whether a controversy is of such a nature as should be adjudicated in probate depends mainly upon the status of the claimant and the nature of the property to which title is sought. (*Central Bank* v. *Superior Court*, 45 Cal.2d 10 [285 P.2d 906].) These rules apply with equal force to guardianship estates. (*Central Bank* v. *Superior Court*, 45 Cal.2d 10

[285 P.2d 906] ; *Guardianship of Vucinich*, 3 Cal.2d 235 [44 P.2d 567].)

However, the situation confronting us here is unlike the usual case of the representative of an estate claiming title in his individual capacity. A controversy has been instituted for the first time by way of a final account, by a former guardian after her removal by the court, under most unusual circumstances. The record before us is replete with appellant's improper, incomplete and inaccurate accounts, and a course of conduct as guardian since 1946 which has involved commingling of personal funds with those of the estate, unauthorized activities, lack of cooperation, evasiveness, particularly in connection with filing accounts and turning assets over to the new guardian, exorbitant and unjustified claims for services rendered and expenses, carelessness in keeping assets intact and mismanagement generally. Since November 20, 1952, the estate has had a special guardian and since April 23, 1953, the department has been and now is general guardian.

Considerable court action, consisting mostly of adversary hearings has taken place—May 12, 1952, resulting in surcharge and suspension; March 11, 1953, resulting in removal; June 29, 1955, resulting in a refusal to settle the final account; and October 24, 1955, resulting in the order from which this appeal is taken. Over three years elapsed between the time of her removal and her first hearing on the final account. Meanwhile appellant finally reluctantly turned over what estate assets she had left to the guardian, and went to jail briefly for her original failure to do so at which time she made no personal claim to them. By the time the final account was heard, October 24, 1955, all of the estate property that could be found had been turned over to the guardian. Because of the deplorable state of her account, appellant was surcharged $7,415.90. It was at this point the probate court determined that the matter of her claim of title to the estate assets was not "proper for the consideration of the probate court at this time."

Assuming that the probate court had power, in settling the final account of a "removed" guardian, to hear and determine her personal claim of title, could the court under the circumstances of this case decline to do so? There seems to be no practical reason why the superior court, in the exercise of its general equity jurisdiction may not hear the controversy since the incompetent is now represented by a guardian and by

counsel. Furthermore, the superior court has jurisdiction of the subject matter of the controversy either as a matter to be disposed of in the exercise of its equity jurisdiction, or to be adjudicated in the guardianship proceedings pending in the probate court. The nature of appellant's claim is such that while asserting title to the duplex property, she must admit she sold it for the estate after petitioning the court to allow her to do so, and conveyed good title to a bona fide purchaser without notice. The return of the property itself being legally impossible, should she prevail, her claim must be that the guardianship is a voluntary trustee of the proceeds of the sale for her benefit. Such a claim would as well fall within the equity jurisdiction of the superior court.

Under the circumstances of this case, is the jurisdiction of the probate court to hear the controversy exclusive? In the case of *Schlyen* v. *Schlyen*, 43 Cal.2d 361 [273 P.2d 897], the Supreme Court speaking through Mr. Justice Shenk discussed at length the jurisdiction of the superior court sitting in probate. While conceding in that case that the controversy was one which could have been settled within the probate jurisdiction, the court held that under the circumstances therein, the matter was properly heard by the superior court since the probate jurisdiction was not exclusive. The court at page 377 declared that it had before it a "case where the superior court in which the action is pending had jurisdiction of the subject matter of the action either as a case to be disposed of in the exercise of its equity jurisdiction or to be adjudicated in the probate proceeding pending in the same court, depending on the circumstances existing at the time the motion to dismiss was made." The court held "that the superior court has general jurisdiction in equity cases such as the present one; (2) that in the absence of a demurrer, answer, motion or other timely objection on the ground that the issues involved should be tried in probate, the superior court may adjudicate those issues with the same force and effect as if the objection had not been made; (3) that when as here the issues pertain only to the rights of parties in privity with the estate and do not involve the rights of third parties or strangers to the estate the superior court sitting in probate has jurisdiction and should adjudicate them, but that such jurisdiction is not exclusive, depending on the facts of the particular case and may be waived."

Of further interest is the case of *Medeiros* v. *Cotta*, 130 Cal. App.2d 740 [279 P.2d 814], involving a widow's action to set

aside the husband's gift of her share of community property made before his death. Following the Schlyen case, the court held that the jurisdiction of the superior court sitting in probate to try title to property as between heirs and a personal representative is not exclusive and that the superior court under its general equity jurisdiction may also, in the absence of timely objection, try such title.

It is true that the factual situations in both cases cited herein differ substantially from the one at bar, yet it is clear from both of them that the probate jurisdiction to hear a controversy such as the one here involved, is not ''exclusive'' and that it could properly be heard by the superior court in the exercise of its equity jurisdiction. We believe under the unusual circumstances of the instant case that although the probate court might have properly heard appellant's claim of title on the settlement of the final account, there was no error in its refusal to do so.

Appellant also urges that she has been deprived of due process by being surcharged on her intermediate account, which surcharge should have been reserved until her final account. We see no merit to this contention. The court has the power in settling intermediate accounts to allow or disallow claims and hold the guardian accountable for a proper administration of the estate, even to the extent of making him liable for mismanagement or loss of assets. The supervisory power of the court to protect the estate of a ward is the main reason behind the law requiring periodic accounting. The burden was on appellant at the hearings on her previous accounts to prove her claims. (*Estate of Jacobson*, 56 Cal. App.2d 255 [132 P.2d 229].) It is apparent she failed to meet her burden and a surcharge resulted. Regardless of her dissatisfaction with the result of the hearing, she not only had her day in court but the court was most lenient in its dealings with her. Her claim that she was not accorded due process is entirely untenable.

Appellant has contended also that she was entitled to a jury trial when the final account was heard. She relies heavily on *Estate of Perkins*, 21 Cal.2d 561 [134 P.2d 231]. That case holds that a party to a probate proceeding is entitled to a trial by jury when there is statutory authority therefor. However, there is no statutory authority for the use of a jury in the settlement of accounts. (*Estate of Bell*, 58 Cal.App.2d 333 [136 P.2d 804].)

She also asserts that the failure of the trial court to

348

make findings and conclusions separate from the judgment invalidates it. There is no requirement that a court sitting in probate file findings separately. (*Swart* v. *Swart*, 49 Cal. App.2d 44 [120 P.2d 940]; *Estate of Janes*, 18 Cal.2d 512 [116 P.2d 438].)

The attempted appeal from the orders of October 1, 1952, entered October 6, 1952; July 13, 1955; March 25, 1953; April 22, 1953; May 23, 1953; March 19, 1956, and January 23, 1956 is dismissed. For the foregoing reasons the order entered January 9, 1956, is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 8, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 14, 1959.