*354
 
 CONLEY, P. J.
 

 This appeal from a decree of distribution tests the responsibility of the probate judge in California to administer on his own motion the requirements of section 1020.1 of the Probate Code, which provides: “The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee, or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or
 
 on its own motion inquire into the consideration for such assignment,
 
 transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable. Notice of a hearing on any motion made pursuant to this section shall be served personally or by registered mail as the court may direct at least 10 days before the hearing upon the heir, devisee, or legatee executing any such assignment, transfer, agreement, request, or instructions and upon the person or persons claiming thereunder.” (Italics added.)
 

 Jessie Veda Plum died intestate in Sacramento on November 15, 1963, leaving an estate appraised at $24,645.35; her' husband, Claude D. Plum, was then in the Sacramento County Hospital. Five days after her death, he was permitted to leave the hospital to attend her funeral.
 

 Mr. Plum, who appears to belong to the class of so-called senior citizens, stated during his oral argument before this court that he was encountered while temporarily free from the hospital ward by Alfred B. McKenzie of Carmichael, who later became attorney for the administrator, and by a son-in-law of the decedent, and that attorney McKenzie solicited his signature to a document hereinafter more fully described by representing to him that his deceased wife had executed a will, which left all of her property to her four children by a previous marriage, and that one of these children, Leslie
 
 *355
 
 Pantie, was in an ideal position to act as her personal representative. Mr. Plum said that, believing these representations, he executed on the stationery of Mr. McKenzie a renunciation of his right to be administrator and waived inheritance from his wife in favor of her children as follows: “. . . in consideration for such renunciation, the children of decedent agreed jointly and severally to give Claude D. Plum, at the time of final distribution, fifteen percent of the value of the total estate distributed. Should any sums be paid to Claude D. Plum prior to that time, such sums will be included in said fifteen percent, whether paid by the estate or the children individually. ’ ’
 

 Mr. Plum presently contends that all of the property which is referred to in the final decree of distribution was in fact community property. If this be so, the husband, in the absence of a waiver, would be entitled to all of it upon the death of his wife. (Prob. Code, § 201.) And, even if the assets were not community but separate property of the wife, he would be entitled to one-third of the net estate, as there was no will. (Prob. Code, § 221.) In the circumstances, it seems doubtful that a man, particularly of Mr. Plum’s obvious lack of affluence, would consent to part with all of his interest in the estate for a mere 15 percent of the net. These stark facts illustrate the need for a realistic implementation by the probate judge of the provisions of a section 1020.1 of the Probate Code. Even a rudimentary sense of justice emphasizes the conclusion that in administering the provisions of that section, the probate judge should insist upon making inquiry as to the circumstances prevailing at the time of the renunciation by Mr. Plum in favor of the children of his wife’s first marriage.
 

 There was also a strange lack of participation in the appeal by attorney McKenzie in connection with the proceedings relative to Mr. Plum’s rights. After Mr. Plum had filed his brief, the clerk of the Court of Appeal of the Third Appellate District, where the case was then pending, wrote to Mr. McKenzie under date of January 9, 1967, to remind him that respondent’s brief was overdue, and that if it were not filed within 30 days, the case might be submitted for decision on the record and appellant’s opening brief, pursuant to the requirements of rule 17 (b) of the California Rules of Court, unless good cause were shown for relief from his default. Mr. McKenzie replied, under date of January 11, 1967, as follows:
 

 
 *356
 
 ‘ ‘Dear Mr. Kramer:
 

 “I have your letter of January 9, notifying me that Respondent’s Brief in the above entitled matter is overdue.
 

 “As I do not understand the Opening Brief, I intend to let well enough alone and not file a responding brief. The appeal may be submitted immediately on the record and Appellant’s Opening Brief.
 

 Very truly yours,
 

 /s/ Alfred B. McKenzie
 

 Alfred B. McKenzie.”
 

 The brief which had been filed by Mr. Plum, acting in propria persona, was lawyer-like in an expression of his contention that the probate court did not have jurisdiction to pass on his claim and that, as all of the property in the estate had been community property of the decedent and himself, it would be necessary to determine the question in an action separate from the probate proceedings. Among the many cases cited by Mr. Plum in his brief were:
 
 Ex parte Casey,
 
 71 Cal. 269 [12 P. 118];
 
 In re Haas,
 
 97 Cal. 232, 234 [31 P. 893, 32 P. 32];
 
 Estate of Klumpke,
 
 167 Cal. 415, 421 [139 P. 1062];
 
 Bauer
 
 v.
 
 Bauer,
 
 201 Cal. 267, 271 [256 P. 820];
 
 Estate of Kurt,
 
 83 Cal.App.2d 681 [189 P.2d 528];
 
 Central Bank
 
 v.
 
 Superior Court,
 
 45 Cal.2d 10, 19 [285 P.2d 906], The contention was so clear that we entertain surprise that Mr. McKenzie said that he did not understand it. Our surprise grows when he expressed the thought it was unnecessary to file a brief in reply and reaches the explosion point when, by consulting our records, we find that, although he once wrote the clerk of this court that he estimated he would need 15 minutes to argue his client’s case here, he finally did not appear at all and left Mr. Plum to seek a reversal without interposing any views on behalf of his client.
 

 We conclude that the case should be reversed with instructions to the trial judge to make diligent inquiry on retrial concerning Mr. Plum’s remission of any right against the estate except for 15 percent of the net, although he now claims he was entitled to all of the property of the estate as community, and it seems clear that, at the very least, he had a statutory right to 33% percent of it if it was his wife’s separate property. (See
 
 Estate of Simmons,
 
 217 Cal.App.2d 580, 586 [31 Cal.Rptr. 861];
 
 Estate of Freeman,
 
 238 Cal.App.2d 486 [48 Cal.Rptr. 1].)
 

 However, Mr. Plum’s argument that the probate court could not decide his claim that all of the property of the
 
 *357
 
 estate had been community property and that he must file a separate suit under the general jurisdiction of the superior court to test the contention is unavailing to him under thé recent holding in
 
 Estate of Baglione,
 
 65 Cal.2d 192 [53 Cal.Rptr. 139, 417 P.2d 683]. Mr. Chief Justice Traynor there discusses the general rule with respect to the lack of jurisdiction of the probate court to determine title to property as between the estate and another claimant, but sets forth the exceptions to the general rule. At pages 196-197 of the opinion it is said: “. . . ‘ where a controversy has been held to have a sufficient connection with a pending probate proceeding to be properly litigated therein. . . .’
 
 (Central Bank
 
 v.
 
 Superior Court,
 
 45 Cal.2d 10, 15 [285 P.2d 906].) The connection may arise out of the relationship between the parties. Thus the superior court sitting in probate can adjudicate a claim to assets from the estate asserted by an executor or administrator in his individual capacity
 
 (Schlyen
 
 v.
 
 Schlyen,
 
 43 Cal.2d 361, 372-373 [273 P.2d 897];
 
 Stevens
 
 v.
 
 Superior Court,
 
 155 Cal. 148, 150-151 [99 P. 512]), and it can determine whether an assignment or other transfer of the interest of an heir, legatee, or devisee to a third party is valid and order distribution accordingly. (Prob. Code, §§ 1020, 1020.1;
 
 Estate of Stanley,
 
 34 Cal.2d 311, 318-319 [209 P.2d 941].) The connection may also arise out of the nature of the claim to the property. The superior court sitting in probate can determine the claim of a surviving wife to her share of the community property
 
 (Estate of Burdick,
 
 112 Cal. 387, 393-396 [44 P. 734];
 
 Colden
 
 v.
 
 Costello,
 
 50 Cal.App.2d 363, 369 [122 P.2d 959]) or adjudicate a dispute between claimants to property 1 conceded ... to be or to have been acquired ... in the course of probate proceedings. ’
 
 (Central Bank
 
 v.
 
 Superior Court, supra,
 
 at p. 16;
 
 Estate of De Barry,
 
 43 Cal.App.2d 715, 725-726 [111 P.2d 728].) In
 
 Woods
 
 v.
 
 Security-First Nat. Bank,
 
 46 Cal.2d 697 [299 P.2d 657], we recognized a third type of exception based on the nature of the claim and the claimant’s relationship to the estate. When a party invokes the jurisdiction of a court sitting in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee, or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property.
 
 (Id.
 
 at p. 704; see
 
 Estate of Stone,
 
 170 Cal.App.2d 533, 537-539 [339 P.2d 220].) The rationale for this exception is the conservation of time, energy, and money of
 
 *358
 
 all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless. In the exercise of its legal and equitable powers (see
 
 Schlyen
 
 v.
 
 Schlyen, supra,
 
 at p. 371;
 
 Estate of Cover,
 
 188 Cal. 133, 139 [204 P. 583], a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multi-faceted claim in separate proceedings once all the necessary parties are before the court. Thus in the instant case, once the court determined that Marie had a community interest in the Lake Tahoe property subject to probate, it should have resolved the entire controversy and determined her rights to that property under the alleged oral agreement with the deceased. Any statements in
 
 Sieroty
 
 v.
 
 Silver,
 
 58 Cal.2d 799 [26 Cal.Rptr. 635, 376 P.2d 563], and
 
 Smith
 
 v.
 
 Smith,
 
 220 Cal.App.2d 30 [33 Cal.Rptr. 559], to the contrary are disapproved.”
 

 By Mr. Plum’s participation in the probate proceeding and by the fact that he has a conceded right, at the very least, to 15 percent of the net value of the estate, it is clear that he is not a stranger to the estate, but in privity with it. And it is said in the
 
 Baglione
 
 opinion,
 
 supra:
 
 “When a party invokes the jurisdiction of a court sitting in probate by asserting a substantive right in a particular piece of property or in certain assets as an heir, legatee or devisee, he may also obtain a judgment in that court determining any additional claims that he asserts against those in privity with the estate in the same property. ’ ’
 

 The court points out, as above quoted, referring to
 
 Schlyen
 
 v.
 
 Schlyen,
 
 43 Cal.2d 361, at page 371 [273 P.2d 897], and the
 
 Estate of Cover,
 
 188 Cal. 133 [204 P. 583], that a superior court sitting in probate which has jurisdiction over one facet of a claim to certain property in the estate should determine all aspects of the claim. For this reason, we hold that upon a retrial of the ease, the probate court has jurisdiction to determine whether or not there is any truth in the claim by Mr. Plum that all, or at least some, of the property handled by the estate was community property. In view of the doubt as to whether or not the trial court will set aside the document by which the husband ostensibly gave up his claim to a major part of the estate, apparently without any consideration, it is possible that a decree of distribution may be adopted differing essentially from the present one; furthermore, there should be an intensive examination by the court of the details of the
 
 *359
 
 tendered accounting; for example, the basis of the proposed attorney’s fee in connection with the sale of the encumbered house should be looked into (California Estate Administration, Pees and Commissions (Cont. Ed. Bar) § 38.14, p. 965). The reversal, therefore, must be comprehensive, and the trial court should proceed accordingly.
 

 The decree of distribution is reversed, and it is ordered that the appellant shall recover a judgment for his costs on appeal against all of the heirs other than appellant, to-wit: Leslie Pantle, Elsie Burlchard, Evelyn Claus, and Ruth Roley.
 

 Stone, J., and Gargano, J., concurred.